United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGRID & ISABEL, INC., | Case No. C-08-2554 JCS |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER** |
| v. | **[Docket Nos. 38, 50]** |
| BABY BE MINE, LLC, | |
| Defendant . | |

## I.  INTRODUCTION

Plaintiff Ingrid & Isabel Inc., ("Plaintiff") alleges that Defendant Baby be Mine ("Defendant") infringes its patent that relates to maternity apparel, United States Patent No. 7,181,775 ("the '775 patent"), entitled "Maternity Garment." The '775 patent was issued on February 27, 2007. The parties have presented ten disputed claim terms for construction. The meaning of these disputed claim terms is a question of law that must be resolved by the Court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). A claim construction hearing was held on March 25, 2009.

## II.  LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Generally, claim terms are given the ordinary and customary meaning that would be ascribed to them by a person of ordinary skill in the field of the invention. *Id.* at 1313. The most "significant source of the legally operative meaning of disputed claim language" is the

intrinsic evidence of record, that is, the claims, the specification and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1312. In some cases, the specification may reveal a "special definition" given by the inventor that differs from the meaning the term might otherwise possess. *Id*. at 1316. A specification may also reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor." *Id*. A person of ordinary skill in the art also looks to the prosecution history of a patent to understand how the patent applicant and the Patent Office understood the claim terms. *Id*. at 1313, 1317.

While claims are to be construed in light of the specification, courts must be careful not to read limitations from the specification into the claim. *Phillips*, 415 F.3d at 1323. Thus, if a patent specification describes only a single embodiment, that does not mean the claims of the patent necessarily must be construed as limited to that embodiment. *Id*. Rather, the purpose of the specification "is to teach and enable those of skill in the art to make and use the invention" and that sometimes, the best way to do that is to provide an example. *Id*. In *Phillips*, the Federal Circuit acknowledged, "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification can be a difficult one to apply in practice." *Id*.

Courts may also use extrinsic evidence in construing claim terms if it is necessary, so long as such evidence is not used to "vary or contradict the terms of the claims." *Markman,* 52 F.3d at 980. The Federal Circuit has warned, however, that such evidence is generally "less reliable than the patent and its prosecution history." *Phillips*, 415 F.3d at 1318. Courts may consider expert testimony, the testimony of the inventor, and prior art, whether or not it is referenced in the specification or prosecution history. *Vitronics*, 90 F.3d at 1584. Courts are also free to consult dictionaries and technical treatises so long as they are careful not to elevate them "to such prominence that it focuses the inquiry on the abstract meaning of the words rather than on the meaning of the claim terms within the context of the patent." *Phillips*, 415 F.3d at 1321-1322. As the court explained in *Markman*, "[extrinsic] evidence may be helpful to explain scientific

2

principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history." 52 F.3d at 980.

### III. CLAIM CONSTRUCTIONS

#### A. Overview of the '775 Patent

The '775 Patent involves a "stretchable generally cylindrical garment, similar to a tube top" or a "band of flexible, stretchable material" that is expandable and is intended to be worn around the approximate waist of a pregnant woman. '775 Patent, 2:32-34, 2:49-53. The methods in the patent allow a pregnant woman to adapt to the changes in the shape of her body without the need to wear "a series of different-sized" or "progressively larger" maternity clothing. '775 Patent, 5:20-22; 6:7-8. The claimed methods also allow a pregnant woman to wear her pre-pregnancy clothing farther along in her pregnancy. '775 Patent, 3:13-14.

In claims 7 and 15, the "band garment of flexible stretchable fabric" is "worn with tension around a pregnant woman's body approximately at the waist." '775 Patent 6:9-12; 8:9-12. In one method, which allows the pregnant woman to wear maternity clothing that is too loose, the band is

> . . . stretched over a skirt or pants which are loose and non-engaging of the woman's belly at an upper end of the skirt or pants, to hold the skirt or pants in place on the woman's body, by stretching and placing the band over an upper portion and upper edge of the pants or skirt so as to flatten such upper edge against the woman's body, the band garment being folded over on itself, with the thickness of the band garment doubled, as worn over the upper portion and upper edge of the pants or skirt.

'775 Patent, 6:15-24; 8:14-25. In claim 8, the band of "flexible, stretchable material" is described as being worn "around a pregnant woman's torso firmly but comfortably approximately at the waist." '775 Patent, 6:28-32.

The patent specification explains that the result of the invention is "an assembled and neat appearance which, although not hiding the fact of pregnancy, avoids ill-fitting clothing and a bulky, awkward or unattractive appearance." '775 Patent, 2:38-40. With the exception of claims 7 and 15, all of the methods claim the result of a "neat, fitted appearance." In claims 1 and 8, the resulting fitted appearance is described as being "without lumpiness." '775 Patent, 5:36; 6:47-48.

### B. Disputed Claim Terms in the '775 Patent

In the claim construction briefs, the parties presented ten terms in the patent for construction by the Court. The first three disputed phrases are similar, differing only in the way that the band is described[1] (in italics). The terms at issue are: 1) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and *engages against the torso*" (claim 2) (regarding methods used to allow a pregnant woman to wear clothing that has become too tight); 2) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and *engages against the body or underclothing*" (claims 6 and 14) (regarding methods used to allow a woman to wear maternity clothing that is too large at the waist or clothing which is loose and non-engaging of the woman's belly) (italics added); and 3) an upper portion of the height of the band extends above the upper edge of the pants or skirt and *engages against the body*" (claim 9) (regarding methods used to allow a woman to wear pre-pregnancy pants or skirts) (italics added);  4) "stretching and placing the band over an upper portion and upper edge of the pants or skirt so as to flatten such upper edge against the woman's body" (claims 5, 7, 13, and 15);  5) "whereby the band holds the upper end of the pants or skirt closely against the torso" (claims 1 and 8); 6) "the band garment holding the too-large upper end of the pants or skirt closely against the body" (claim 5); 7) "the band garment holding the oversized upper end of the pants or skirt closely against the body (claim 13);  8) "to hold the skirt or pants in place on the women's body" (claims 5, 7, 13 and 15); 9) "retaining the pants or skirt in place" (claims 1 and 8); and 10) "providing a neat, fitted appearance" (claims 1, 5, 8, and 13).

At the claim construction hearing, the parties stipulated to a number of proposed constructions, thereby reducing the number of terms in dispute. The Court will address each term presented for construction in the parties' briefs.

---

[1] These three disputed terms will be discussed together below.

    **1.**    **Disputed terms 1-3: "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the torso" (claim 2); ". . . engages against the body or underclothing" (claims 6 and 14) and ". . . engages against the body." (claim 9)**

In its briefing, Plaintiff argued that the first disputed term should be construed as: "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the torso; *but the pants or skirt need not be in direct contact with the woman's skin.*" Pl.'s Claim Const. Brf. at 5. Defendant proposed the following construction: "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the torso *of the pregnant woman.*" *Id.*

As stated above, the parties proposed the same construction of the other two other disputed phrases, found in Claims 6, 9 and 14, which are very similar. In Claims 6 and 14, the parties disputed the meaning of the phrase: "an upper portion of the height of the band extends above the upper edge of the pants or skirt and *engages against the body or underclothing.*" And in Claim 9, the parties contested the meaning of the phrase "an upper portion of the height of the band extends above the upper edge of the pants or skirt and *engages against the body*" (italics added). In these three claims, Plaintiff proposed that the following language to the disputed phrase be added: "*but the pants or skirt [or band] need not be in direct contact with the woman's skin.*" Defendant disagreed. And in all three phrases, Defendant sought to insert the modifying term "pregnant" before the term "woman."

    **a.**    ***"But the pants or skirt [or band] need not be in direct contact with the woman's skin"***

The Court addresses first the question of whether the disputed term requires the addition of the phrase "*but the pants or skirt [or band] need not be in direct contact with the woman's skin.*" At the claim construction hearing held in this matter, the parties stipulated that there is no requirement in the patent that the pants or skirt have direct contact with the woman's skin. The Court concludes that the disputed phrase must be understood to include the concept that the band need not touch a woman's skin. However, the Court declines to construe this term as having any reference to whether the clothes of a woman must touch her skin.

5

1 The specification supports the interpretation that the band need not contact skin. The 2 specification states "the band garment of the invention preferably is formed of smooth knit fabric 3 which, with the elastic in the fabric, comfortably hugs a woman's lower abdomen, flattening and 4 *shaping any fabric underneath*." '775 Patent, 3:8-21 (emphasis supplied). Because the patent 5 specification refers to a situation in which there would be fabric beneath the band, rather than bare 6 skin, insertion of the proposed language prevents a limitation that would be contrary to the patent 7 specification. The specification also contains embodiments where the band is worn with a top 8 tucked into the band, and where the band is stretched over the top of the pants. '775 Patent, 5:38-42 9 (claim 3); 2:67-3:3. In such an instance, the band would be placed on top of both the lower edge of 10 the shirt or blouse, and the upper edge of the pants. Under this scenario, the band would not 11 necessarily be touching the woman's skin.

12 However, the disputed phrases cannot be interpreted to include any reference to whether a 13 woman's clothes touch her skin. There is nothing in the specification or the claims that makes any 14 reference to this issue. Therefore, the Court rejects Plaintiff's request to interpret the claims in this 15 manner.

### *b.     The modifier "pregnant"*

17 Next, the Court addresses whether the word "pregnant" must be inserted into the disputed 18 phrases as proposed by Defendant in its claim construction brief. The Court concludes that it does 19 not.

20 While Defendant is correct that the independent claims 1, 5, 8 and 13 (on which claims 2, 6, 21 9 and 14 depend) recite that the band is worn around the "pregnant" woman's torso or body, the 22 Court is not persuaded that this requires the further addition of the word "pregnant" everywhere that 23 the word "woman" appears in the patent. It is clear from the patent that the band is worn around the 24 body of a pregnant woman. Moreover, at the hearing in this matter, Plaintiff stipulated that the 25 wearer of the present device – with respect to all claims in the patent – is a pregnant woman. The 26 addition of the word "pregnant" is redundant and superfluous. Claim construction is necessary when 27 the terms of the patent require clarification for use in the determination of infringement. It is not "an

1  obligatory exercise in redundancy." *NTP, Inc. v. Research in Motion,* 418 F.3d 1282, 1311 (Fed.

2  Cir. 2005), *cert. denied*, 126 S.Ct. 1174 (2006) (citation omitted).

3       The Court therefore declines to adopt Defendant's proposed modifier "pregnant."  The Court

4  construes the terms as follows:  "an upper portion of the height of the band extends above the upper

5  edge of the pants or skirt and engages against the torso; but the band need not be in direct contact

6  with the woman's skin." (Claim 2); "an upper portion of the height of the band extends above the

7  upper edge of the pants or skirt and engages against the body or underclothing; but the band need not

8  be in direct contact with the woman's skin." (Claims 6 and 14); "an upper portion of the height of

9  the band extends above the upper edge of the pants or skirt and engages against the body; but the

10 band need not be in direct contact with the woman's skin." (Claim 9).

11           **2.**     **Disputed Term 4: "Stretching and placing the band over an upper portion and upper edge of the pants or skirt so as to flatten such upper**

12                 **edge against the woman's body" (claims 5, 7, 13, and 15)**

13      Plaintiff proposes that the term "stretching and placing the band over an upper portion and

14 upper edge of the pants or skirt so as to flatten such upper edge against the woman's body" be

15 construed as: "*positioning* the band over *the top of at least some portion of the pants or skirt so that*

16 *the covered portion of the pants or skirt remains flat against the woman's body*, *but the pants or*

17 *skirt need not be in direct contact with the woman's skin*." Pl's. Claim Const. Brf. at 7.  Plaintiff

18 seeks to replace the term "stretching and placing" with the term "*positioning*."

19      Defendant urges the following construction of this term: "*stretching and positioning* the band

20 over an upper portion and upper edge of the pants or skirt so that the upper edge of the pants or skirt

21 remains flat against the *pregnant* woman's body." *Id.* (proposed changes in italics).

22      At the hearing on this matter, the parties stipulated that the band need not cover the entire

23 upper edge of the pants or skirt.  In light of this stipulation, the Court concludes that the claim

24 language is clear and declines to construe the disputed term as originally proposed by the parties in

25 their briefs.

26      The Court also declines to adopt the parties' proposed claim constructions because they are

27 not supported by the patent.  Plaintiff's proposed construction, for example, omits the limitation

28 "stretching" thereby impermissibly broadening the claims.  *See Texas Instruments Inc. v. U.S.*

*Intern. Trade Com'n.,* 988 F.2d 1165, 1171 ("to construe the claims in the manner suggested by TI would read an express limitation out of the claims.  This, we will not do because courts can neither broaden nor narrow claims. . .") (internal quotations and citations omitted).  It is clear from the specification and prosecution history that the inventor intended that the band be comprised of a *stretchable* material and that the methods in the patent involve expansion or *stretching* around the woman's pregnant belly.  The first sentence in the specification provides:  "This invention concerns maternity apparel, *and specifically relates to a stretchable garment. . .*"  '775 Patent, 1:5-6 (emphasis supplied).  Furthermore, the inventor, Ingrid Carney, submitted a declaration to the U.S. Patent and Trademark Office that declared that the method "involves a use of a band of *stretchable* material . . . such as to be expanded and stretched to be work around the pregnant woman's torso." Declaration of Peter Craigie, Exh. B (Declaration of Ingrid Carney, November 1, 2004, ¶ 2) (emphasis supplied).   Plaintiff's proposal to eliminate the word "stretching" results in a different construction than the one proposed during the prosecution of the patent.  *See e.g., Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1221 (Fed. Cir. 1996) (prosecution history relevant not only for purposes of prosecution history estoppel but also for construing meaning and scope of patent claims).

The Court also declines to adopt Plaintiff's construction of the term "upper portion and upper edge" because, in light of the parties' stipulation, the claim language is sufficiently clear.  Moreover, the Court declines to add the language proposed by Plaintiff regarding contact between the pants or skirt and the woman's skin.  The language and method at issue say nothing about whether the pants or skirt contact the skin.

For the reasons state above, the Court also declines to insert the modifier "*pregnant*" before the term "woman."

In light of the parties' stipulated construction of this term, the Court finds that the claim language as written requires no further construction. Accordingly, the Court declines to construe the disputed term beyond the language of the patent claim as written.

   **3.**  **Disputed Terms 5-7: "Whereby the band holds the upper end of the pants or skirt closely against the torso" (claims 1 & 8); the band garment holding the too-large upper end of the pants or skirt closely against the body" (claim 5); "the band garment holding the oversized upper end of the pants or skirt closely against the body" (claim 13)**

Plaintiff urges the Court to construe "whereby the band holds the upper end of the pants or skirt closely against the torso"[2] as follows: "*the band holds at least some portion of the pants or skirt firmly against the torso; but the pants or skirt need not be in direct contact with the woman's skin.*" Pl.'s Claim Const. Brf. at 9.

Defendant proposes "whereby the band holds the upper end of the pants or skirt *firmly against the torso of the pregnant woman.*" *Id.* Similar phrases appear in Claims 5 and 13 of the patent, respectively: "the band garment holding the too-large upper end of the pants or skirt closely against the body" and "the band garment holding the oversized upper end of the pants or skirt closely against the body." The parties' proposed constructions of these phrases are similar to the previous claim terms discussed above. Defendant seeks the insertion of the word "*pregnant*" before "woman" and Plaintiff seeks to insert "*at least some portion*" before the words "pants or skirt" and "too-large pants or skirt." Plaintiff also seeks to add the phrase "*but the pants or skirt [or band] need not be indirect contact with the woman's skin.*"

Because the parties stipulated on the record at the claim construction hearing that the band need not cover the entire upper edge of the pants or skirt, the Court declines to construe the disputed terms beyond the language of the patent. The disputed language is clear on its face.

---

[2]The three phrases differ only in that the band is described as:

- "hold[ing] the upper end of the pants or skirt closely against the torso" regarding methods used to allow a woman to accommodate changes in her shape during pregnancy (claims 1 and 8);

- "holding the too-large upper end of the pants or skirt closely against the body" regarding methods used to allow a woman to wear maternity clothing that is too large at the waist or clothing which is loose and non-engaging of her belly (claim 5); and

- "holding the oversized upper end of the pants or skirt closely against the body" regarding methods used to allow a woman to wear maternity clothing that is too large at the waist or clothing which is loose and non-engaging of her belly (claim 13).

United States District Court
For the Northern District of California

**4.     Disputed Term 8: "To hold the skirt or pants in place on the woman's body" (claims 5, 7, 13, and 15)**

In its claim construction brief, Plaintiff proposed that the term "to hold the skirt or pants in place on the woman's body" be construed as follows: "*holding at least some portion of the pants or skirt so that the pants or skirt are retained in place on the woman's body so as to prevent them from falling down*." Pl. Claim Constr. Brf. at 10. Defendant proposed the following construction of the phrase: "holding at least *the upper edge* of the pants or skirt *firmly* against the body of the pregnant woman so that the pants or skirt are retained in place on the *pregnant* woman's body so as to prevent them from falling down." *Id.*

At the hearing, the parties stipulated to the following claim construction: "To hold the skirt or pants in place *so as to prevent them from falling down*." (italics added).

The Court accepts the parties' stipulation. The Court concludes that there is nothing in the specification or the prosecution history that compels the inclusion of the modifier "firmly." The claim language is not ambiguous. It is clear from the claim language that the band garment accomplishes the goal of holding up the pants or skirt because of the material used to make the band and the manner in which it is worn -- "expanded and stretched to be worn with tension around a pregnant woman's body." '775 Patent, 5:54-55. While the claim should be read in light of the specification, the Court will not add limitations from the specification. Adding the word "firmly" from the patent specification would improperly limit the claim language. For the same reasons discuss above, the Court declines to insert the modifier "pregnant."

Accordingly, the Court adopts the parties' stipulation and declines to insert the additional language that had been proposed in the parties' briefs. The Court construes this phrase as follows: "To hold the skirt or pants in place on the woman's body so as to prevent them from falling down."

**5.     Disputed Term 9: "Retaining the pants or skirt in place" (claims 1 and 8)**

In its claim construction brief, Plaintiff proposed that the phrase "retaining the pants or skirt in place" be construed as follows: "retaining the pants or skirt against the body so as to prevent the pants or skirt from falling down." Pl.'s Claim Constr. Brf at 11. Defendant proposed that it be construed: "retaining the pants or skirt in place *firmly against the torso of the pregnant woman so as*

10

1 *to prevent the pants or skirt from falling down*" *Id.*  Plaintiff again argued that Defendant's
2 construction improperly includes the limitations "firmly" and "pregnant."
3        At the hearing, the parties agreed to the proper construction of the disputed term, suggesting
4 that the Court only add the following claim language to the claim term:  "so as to prevent them [the
5 pants or skirt] from falling down."  Accordingly, the Court accepts the parties' stipulation and
6 construes this claim as follows:  "retaining the pants or skirt in place so as to prevent them from
7 falling down."

       **6.**        **Disputed Term 10: "Providing a neat fitted appearance" (claims 1, 5, 8, 13)**

10        In its claim construction brief, Plaintiff proposed that the claim phrase "providing a neat
11 fitted appearance" be construed as "providing a pleasing orderly appearance, wherein the band
12 conforms to the shape of the body."  Pl.'s Claim Const. Br. at 12.  Plaintiff argued that its
13 construction should be adopted because it is "consistent with the plain and ordinary meaning of the
14 phrase" and "consistent with the teachings of the specification."  *Id.*
15        Defendant sought the following claim construction: "*providing a fitted appearance that is
16 flat with the upper end of the pants or skirt held flat against the torso of the pregnant woman.*"
17 Def.'s Claim Const. Brf. at 16.  Defendant argued that its construction is derived from the wording
18 of claims 1, 5, 8, and 13 regarding a "fitted appearance" and points out that these claims recite that
19 the band holds the upper end of the pants or skirt "closely against the body."  *Id*. at 17.
20        At the hearing in this matter, the parties agreed that the claim language is not ambiguous and
21 need not be construed.  The Court accepts the parties' stipulation.
22        The Court is not persuaded by the arguments originally proposed by the parties in their
23 briefs.  For example, the Court finds that a fitted appearance without bulkiness is a result of
24 performing the methods claimed in the '775 Patent.  The Court declines to adopt the additional
25 limitation proposed by Defendant that the clothes be held "flat."  Inserting "flat" would be importing
26 a limitation from the specification.
27        The Court is similarly unpersuaded by the construction originally proposed by Plaintiff.
28 Plaintiff's proposed construction of a "pleasing orderly appearance" includes language that does not

11

appear in the claim language or specification of the '775 Patent.  Moreover, the inclusion of this term does not clarify any potential ambiguity in the claim language because it replaces one subjective term "neat, fitted" with another subjective term "pleasing orderly."

The Court also declines to adopt Plaintiff's "conforming to the shape of the body" language. Plaintiff provided almost no justification for this particular construction.  Because the term "fitted" is not ambiguous and adequately conveys the meaning of the claim, the Court rejects the phrase "wherein the band conforms to the shape of the body."

The Court therefore declines to accept the construction proposed by either party in their briefs.  Rather, the Court accepts the parties' stipulation on the record that the disputed term is clear and requires no construction.

## IV.   CONCLUSION

For the reasons stated above, the Court construes the disputed terms as follows:

| CLAIM TERM | COURT'S CONSTRUCTION |
|---|---|
| **Disputed Term 1-3:** 1) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the torso" (claim 2); 2) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the body or underclothing" (claims 6 and 14) and 3) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the body." (claim 9) | 1) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the torso; but the band need not be in direct contact with the woman's skin" (claim 2); 2) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the body or underclothing; but the band need not be in direct contact with the woman's skin" (claims 6 and 14); and 3) "an upper portion of the height of the band extends above the upper edge of the pants or skirt and engages against the body; but the band need not be in direct contact with the woman's skin." (claim 9) |
| **Disputed Term 4:** "Stretching and placing the band over an upper portion and upper edge of the pants or skirt so as to flatten such upper edge against the woman's body" (claims 5, 7, 13, and 15) | No construction. |

| | |
|---|---|
| **Disputed Terms 5-7:** "Whereby the band holds the upper end of the pants or skirt closely against the torso" (claims 1 & 8); the band garment holding the too-large upper end of the pants or skirt closely against the body" (claim 5); "the band garment holding the oversized upper end of the pants or skirt closely against the body" (claim 13) | No construction. |
| **Disputed Term 8:** "To hold the skirt or pants in place on the woman's body" (claims 5, 7, 13, and 15) | "To hold the skirt or pants in place on the woman's body so as to prevent them from falling down." |
| **Disputed Term 9:** "Retaining the pants or skirt in place" (claims 1 and 8) | "Retaining the pants or skirt in place so as to prevent them from falling down." |
| **Disputed Term 10:** "Providing a neat fitted appearance" (claims 1, 5, 8 and 13) | No construction. |
| | |

IT IS SO ORDERED.

Dated: April 3, 2009

_____
JOSEPH C. SPERO
United States Magistrate Judge

13